IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| RAYMOND G. NOBLE, ) | |
| ) | |
| Plaintiff, ) | |
| ) | CIVIL ACTION |
| v. ) | |
| ) | No. 09-1386-JWL |
| ) | |
| MICHAEL J. ASTRUE, ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |
| _____ ) | |

**MEMORANDUM AND ORDER**

Plaintiff seeks review of a decision of the Commissioner of Social Security (hereinafter Commissioner) denying supplemental security income (SSI) under sections 1602, and 1614(a)(3)(A) of the Social Security Act. 42 U.S.C. §§ 1381a, and 1382c(a)(3)(A) (hereinafter the Act). Finding error in the administrative law judge's (ALJ's) use of the Medical-Vocational Guidelines (the grids) the court ORDERS that the Commissioner's decision is REVERSED, and that judgment shall be entered in accordance with the fourth sentence of 42 U.S.C. § 405(g) REMANDING the case.

**I.    Background**

Plaintiff applied for disability insurance benefits (DIB) and SSI on May 4, 2006 alleging disability since January 1, 1974. (R. 9, 112-23). The applications were denied

initially and upon reconsideration, and Plaintiff requested a hearing before an ALJ. (R. 9, 63-66, 88). Plaintiff's request was granted, and Plaintiff appeared with counsel and testified at a hearing before ALJ Ronald J. Feibus on November 14, 2008. (R. 9, 39-62, 89-101). At the hearing, Plaintiff amended his alleged onset date to May 6, 2006, and acknowledged that his DIB application would be dismissed because the amended onset date was after his date last insured for DIB. (R. 9, 43-44); (Pl. Br. 3). The ALJ subsequently dismissed Plaintiff's DIB application, and Plaintiff does not contest that portion of the decision. (R. 18).

On January 27, 2009, ALJ Feibus issued his decision dismissing Plaintiff's DIB application, finding that Plaintiff is not disabled as defined in the Act, and denying Plaintiff's SSI application. (R. 9-18). The ALJ found that Plaintiff has not engaged in substantial gainful activity since his amended onset date and that he has a severe combination of impairments including degenerative disc disease, left shoulder impairment status post surgery, and affective, anxiety-related, and learning disorders; but that no impairment or combination of impairments meets or medically equals the severity of an impairment listed in the Listing of Impairments (20 C.F.R. Pt. 404, Subpt. P, App. 1). (R. 11). The ALJ next considered Plaintiff's allegations of symptoms resulting from his impairments and found them to be not credible; summarized the record evidence, particularly the medical evidence; and evaluated the medical opinions, giving little weight to the opinion of Plaintiff's primary care physician, and "considerable weight" to the opinions of the state agency physicians and psychologists who examined Plaintiff or

2

reviewed the record evidence. (R. 13-16). Based upon his consideration of the evidence, the ALJ assessed Plaintiff with the residual functional capacity (RFC) for light unskilled and semiskilled work, limited by an inability to climb ladders, ropes, and scaffolds or to perform overhead reaching or lifting with his left upper extremity; and the ability to crouch and crawl only occasionally. (R. 13). The ALJ determined that Plaintiff has no past relevant work, but that if Plaintiff were able to perform the full range of light work, grid rule 202.20 would direct a finding of "not disabled." (R. 17). The ALJ found Plaintiff's additional limitations "have little or no effect on the occupational base of unskilled light work," concluded that Plaintiff was "not disabled" within the meaning of the Act, and denied his application for SSI. Id.

Plaintiff sought Appeals Council review of the ALJ's decision, but his request was denied. (R. 1-3, 109-11). Therefore, the ALJ's decision is the final decision of the Commissioner. (R. 1); Cowan v. Astrue, 552 F.3d 1182, 1184 (10th Cir. 2008). Plaintiff filed a complaint seeking judicial review pursuant to 42 U.S.C. § 405(g). (Doc. 1).

## II. Legal Standard

The court's jurisdiction and review are guided by the Act. Wall v. Astrue, 561 F.3d 1048, 1051-52 (10th Cir. 2009) (citing 42 U.S.C. § 405(g)); see also, 42 U.S.C. § 1383(c)(3) (final decision in an SSI case "shall be subject to judicial review as provided in section 405(g) of this title"); accord, Blea v. Barnhart, 466 F.3d 903, 905 (10th Cir. 2006) (asserting jurisdiction pursuant to 42 U.S.C. § 405(g) in a case involving both Title II and Title XVI denials). Section 405(g) of the Act provides, "The findings of the

Commissioner as to any fact, if supported by substantial evidence, shall be conclusive." The court must determine whether the factual findings are supported by substantial evidence in the record and whether the ALJ applied the correct legal standard. Lax v. Astrue, 489 F.3d 1080, 1084 (10th Cir. 2007); accord, White v. Barnhart, 287 F.3d 903, 905 (10th Cir. 2001). Substantial evidence is more than a scintilla, but less than a preponderance, and it is such evidence as a reasonable mind might accept to support a conclusion. Wall, 561 F.3d at 1052; accord, Gossett v. Bowen, 862 F.2d 802, 804 (10th Cir. 1988). The court may "neither reweigh the evidence nor substitute [its] judgment for that of the agency." Bowman v. Astrue, 511 F.3d 1270, 1272 (10th Cir. 2008) (quoting Casias v. Sec'y of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991)); accord, Hackett v. Barnhart, 395 F.3d 1168, 1172 (10th Cir. 2005). The determination of whether substantial evidence supports the Commissioner's decision, however, is not simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by other evidence or if it constitutes mere conclusion. Gossett, 862 F.2d at 804-05; Ray v. Bowen, 865 F.2d 222, 224 (10th Cir. 1989).

An individual is under a disability only if that individual can establish that he has a physical or mental impairment which prevents him from engaging in substantial gainful activity and is expected to result in death or to last for a continuous period of at least twelve months. Thompson v. Sullivan, 987 F.2d 1482, 1486 (10th Cir. 1993) (citing 42 U.S.C. § 423(d)). The claimant's impairments must be of such severity that he is not only unable to perform his past relevant work, but cannot, considering his age, education, and

work experience, engage in any other substantial gainful work existing in the national economy. 42 U.S.C. § 423(d)(2)(A).

The Commissioner uses a five-step, sequential process to evaluate disability. 20 C.F.R. § 416.920 (2008); Wilson v. Astrue, 602 F.3d 1136, 1139 (10th Cir. 2010) (citing Williams v. Bowen, 844 F.2d 748, 750 (10th Cir. 1988)). "If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary." Id. (quoting Lax, 489 F.3d at 1084.)

In the first three steps, the Commissioner determines whether claimant has engaged in substantial gainful activity since the alleged onset, whether he has a severe impairment or combination of impairments, and whether the severity of his impairment(s) meets or equals the severity of any impairment in the Listing of Impairments. Williams, 844 F.2d at 750-51. If the claimant's impairments do not meet or equal a listed impairment, the Commissioner assesses his RFC. 20 C.F.R. § 416.920(e). This assessment is used at both step four and step five of the sequential process. Id.

After assessing claimant's RFC, the Commissioner evaluates steps four and five-- whether claimant can perform his past relevant work, and whether, when considering vocational factors of age, education, and work experience, he is able to perform other work in the economy. Wilson, 602 F.3d at 1139 (citing Lax, 489 F.3d at 1084). In steps one through four the burden is on claimant to prove a disability that prevents performance of past relevant work. Blea, 466 F.3d at 907; accord, Dikeman v. Halter, 245 F.3d 1182, 1184 (10th Cir. 2001); and Williams, 844 F.2d at 751 n.2. At step five, the burden shifts

to the Commissioner to show jobs in the economy within Plaintiff's capacity. Id.; Haddock v. Apfel, 196 F.3d 1084, 1088 (10th Cir. 1999).

Plaintiff claims the ALJ erred in assessing RFC, in weighing the medical opinion of his primary care physician, and in applying the grids at step five of the evaluation process. (Pl. Br. 15-22). The Commissioner counters each assertion, arguing that the ALJ properly considered the medical opinion of Plaintiff's primary care physician, that he made a proper RFC assessment, and that the his use of the grids at step five was proper. (Comm'r Br. 4-13). The court finds error requiring remand in the ALJ's use of the grids at step five. It does not address Plaintiff's remaining allegations of error.

## III. Discussion

Plaintiff asserts that the grids may be used only when the record reveals solely exertional limitations. (Pl. Br. 22) (citing Doughty v. Heckler, 596 F. Supp. 1293, 1294 (D. Kan. 1984)). He argues (without citation to any authority) that where the claimant has nonexertional limitations the ALJ must secure vocational expert (VE) testimony. Id. He asserts that the ALJ did not seek VE testimony at the hearing, that Plaintiff's limitations from overhead reaching and lifting are nonexertional limitations, and therefore, the decision must be remanded to obtain VE testimony. Id. The Commissioner argues that the mere presence of nonexertional limitations does not require use of a VE: that VE testimony is not required where the limitations do not further limit Plaintiff's abilities, where the limitations are minimal or insignificant, or where the ALJ discredits Plaintiff's allegations of nonexertional limitations. (Comm'r Br. 12-13) (citing Eggleston

v. Bowen, 851 F.2d 1244, 1247 (10th Cir. 1988); and Castellano v. Sec'y of Health & Human Servs., 26 F.3d 1027, 1030 (10th Cir. 1994)).

In the grids, the Commissioner has provided a tool to aid in making uniform, efficient decisions in determining the types and numbers of jobs existing in the national economy for certain classes of claimants. Heckler v. Campbell, 461 U.S. 458, 468 (1983). However, the grids are applicable "only when they describe a claimant's abilities and limitations accurately." Id. 461 U.S. at 462 n.5; see also Channel v. Heckler, 747 F.2d 577, 579 (10th Cir. 1984). Because the grids are based upon the physical exertion requirements for work in the national economy, they may not be fully applicable for claimants who have nonexertional limitations. Channel, 747 F.2d at 580. Realizing this limitation on the use of the grids, the Commissioner has promulgated a procedure for evaluating claims where both exertional and nonexertional limitations are present:

> (2) [W]here an individual has an impairment or combination of impairments resulting in both strength limitations and nonexertional limitations, the rules in this subpart are considered in determining first whether a finding of disabled may be possible based on the strength limitations alone and, if not, the rule(s) reflecting the individual's maximum residual strength capabilities, age, education, and work experience provide a framework for consideration of how much the individual's work capability is further diminished in terms of any types of jobs that would be contraindicated by the nonexertional limitations.

20 C.F.R., Pt. 404, Subpt. P, App. 2, § 200.00(e)(2); see also Channel, 747 F.2d at 580-81.

The grids direct a finding in a particular case only when there is an "exact fit" between the criteria of a grid rule and the situation before the ALJ. Campbell, 461 U.S. at

7

468; Channel, 747 F.2d at 579. Where the grid rules do not direct a finding, "full consideration must be given to all of the relevant facts in the case in accordance with the definitions and discussions of each factor in the appropriate sections of the regulations which will provide insight into the adjudicative weight to be accorded each factor." 20 C.F.R., Pt. 404, Subpt. P, App. 2 § 200.00(e)(2); see also Channel, 747 F.2d at 579-82 (application of the grids where nonexertional limitations are present).

Where plaintiff is unable to do a full range of work in an exertional category, the ALJ may not conclusively apply the grids. Channel, 747 F.2d at 582 (error to apply the grids absent a finding that plaintiff could perform the full range of sedentary work). Instead, he "must give 'full consideration' to 'all the relevant facts,' App. 2, § 200.00(e)(2), including expert vocational testimony if necessary, in determining whether [plaintiff] is or is not disabled." Channel, 747 F.2d at 583. Where nonexertional limitations affect the range of work of which plaintiff is capable, the grids may serve only as a framework to assist in determining whether sufficient jobs exist in the national economy given plaintiff's limitations and characteristics. Gossett v. Bowen, 862 F.2d 802, 806 (10th Cir. 1988).

But, "[T]he mere presence of a nonexertional impairment does not automatically preclude reliance on the grids. Use of the grids is foreclosed only '[t]o the extent that nonexertional impairments further limit the range of jobs available to the [plaintiff].'" Channel, 747 F.2d at 583, n.6 (quoting Grant v. Schweiker, 699 F.2d 189, 192 (4th Cir. 1983)). Thus, use of a vocational expert is required only where plaintiff's nonexertional

impairments cause a limitation on the range of work available in a particular occupational base and where no other evidence (either in the record or in occupational resources upon which the Commissioner may rely, see 20 C.F.R. § 416.966(d)) establishes that a significant number of jobs of which plaintiff is capable are available. Where the grids establish that a significant number of jobs exist in the economy, the Commissioner need not introduce evidence of specific available jobs. Campbell, 461 U.S. at 468-70.

Here the ALJ explained his application of the grids:

> If the claimant had the residual functional capacity to perform the full range of light work, considering the claimant's age, education, and work experience, a finding of "not disabled" would be directed by Medical-Vocational Rule 202.20. However, the additional limitations have little or no effect on the occupational base of unskilled light work. A finding of "not disabled" is therefore appropriate under the framework of this rule.

(R. 17). The ALJ specifically declined to direct a finding from the grids because Plaintiff cannot perform the full range of light work. However, he used grid rule 202.20 as a framework, and determined Plaintiff is not disabled because his additional limitations restricting the full range of light work have little or no effect on the occupational base. It is this finding regarding additional limitations which Plaintiff argues cannot be made without VE testimony to that effect. But, as explained above, VE testimony is not required where there is other evidence upon which the ALJ may rely in making his determination. Thus, the real question for the court is whether substantial evidence in the record as a whole supports the ALJ's finding that "the additional limitations have little or no effect on the occupational base of unskilled light work." Id.

The additional limitations found by the ALJ consisted of no climbing of ladders, ropes, and scaffolds; no overhead reaching or lifting with his left upper extremity; and only occasional crouching and crawling. (R. 13). He specifically discussed these nonexertional limitations:

> As with exertional capacity, SSR [(Social Security Ruling)] 96-8p requires a claimant's non-exertional capacity be expressed in terms of work-related functions. I find the claimant has non-exertional limitations, primarily as a result of his musculoskeletal impairments, which include no overhead reaching with the left arm, occasional crouching and crawling, and no climbing ladders, ropes, or scaffolds.

(R. 16). However, the ALJ did not explain how he determined these limitations have little or no effect on the occupational base of unskilled light work. Yet, this is specifically the type of occupational information which is within the expertise of a VE, and which is not within the expertise of a legal expert such as the ALJ or this court. In his brief, the Commissioner quotes the case of Glass v. Shalala, 43 F.3d 1392, 1396 (10th Cir. 1994) for the proposition that an ALJ may use the grids "where the ALJ finds, based on substantial evidence, that the nonexertional impairment does not affect residual functioning capacity." However, the Commissioner does not point to "substantial evidence" (record evidence or vocational authority) upon which the ALJ might have relied in making the finding at issue. There is no basis for the ALJ's finding which has been explicitly stated in the decision.

The court notes however, that certain Social Security Rulings (SSR) contain vocational information upon which an ALJ might rely in making step five findings with

regard to the grids. Moreover, the ALJ cited to certain of those SSR's in his decision, albeit without specifying how those SSR's affect or support the step five finding at issue here. (R. 15, 16, 17) (citing SSR 83-10, 83-11, 83-12, 83-14, and 85-15). The court has reviewed these SSR's, and finds they provide some, but not complete, support for the ALJ's finding.

SSR 83-14 reveals that "Relatively few jobs in the national economy require ascending or descending ladders and scaffolding," 1983-1991 West's Soc. Sec. Reporting Serv., Rulings 43, 46 (1992), and that most jobs at the sedentary and light exertion level would not require crouching. Id. at 44. SSR 83-14 also confirms that inability to crawl has little or no effect on the light occupational base. Id. at 46. SSR 85-15 reveals that a limitation to only occasional crouching leaves the sedentary and light occupational base "virtually intact," and that "limitations on the ability to crawl would be of little significance in the broad world of work." Id. at 350. Consideration of these SSR's--upon which the ALJ specifically relied, and which are binding upon an ALJ pursuant to 20 C.F.R. § 402.35(b)(1); accord, Sullivan v. Zebley, 493 U.S. 521, 530 n.9 (1990); Nielson v. Sullivan, 992 F.2d 1118, 1120 (10th Cir. 1993)--reveals that substantial evidence supports the finding that limitations to only occasional crouching and crawling and to no climbing of ropes, ladders, and scaffolds have little or no effect on the occupational base for unskilled light work. To that extent, substantial evidence supports the ALJ's finding.

However, SSR 83-12 considers the situation where an individual has lost the use of an upper extremity. 1983-1991 West's Soc. Sec. Reporting Serv., Rulings 40-41 (1992).

11

In that SSR, the Commissioner suggests that a vocational source (VS) such as a VE should be used to determine the size of the remaining occupational base available to a person who has lost the use of an upper extremity. Id. ("Given an individual's particular RFC, a VS will be able to determine the size of the remaining occupational base."). SSR 85-15 notes that reaching is required in almost all jobs, and that "Significant limitations of reaching . . . may eliminate a large number of occupations a person could otherwise do. Varying degrees of limitations would have different effects, and the assistance of a VS may be needed to determine the effects of the limitations." Id. The ALJ and this court do not have the vocational expertise to determine whether a limitation to <u>no overhead reaching or lifting</u> is a significant limitation of reaching. Nevertheless, the ALJ did not call upon the assistance of a vocational source such as a VE. Further, he did not cite to record evidence or other acceptable evidence showing that the inability to perform overhead reaching or lifting has little or no effect on the occupational base for light work. The court has searched the record and the law, and is unable to find support for the ALJ's finding. The court finds that substantial evidence does not support the ALJ's determination that a limitation to no overhead reaching or lifting has little or no effect on the occupational base of unskilled light work. Therefore, the ALJ's step five finding that "there are jobs that exist in significant numbers in the national economy that the claimant can perform," is not supported by substantial evidence in the record as a whole. Remand is necessary for the Commissioner to correct this error.

Having found error requiring remand in the ALJ's application of step five of the sequential evaluation process, the court sees no need to specifically address Plaintiff's allegations of error in the RFC assessment and in the evaluation of the medical opinions. Plaintiff may make his remaining arguments to the Commissioner on remand, and the Commissioner will determine whether it is necessary to perform another RFC assessment before proceeding to a proper step five determination. The court takes no position on the merits of Plaintiff's remaining arguments.

**IT IS THEREFORE ORDERED** that the Commissioner's decision is REVERSED, and judgment shall be entered in accordance with the fourth sentence of 42 U.S.C. § 405(g) REMANDING the case for proceedings consistent with this opinion.

Dated this 17th day of November 2010, at Kansas City, Kansas.

    s/ John W. Lungstrum
    **John W. Lungstrum**
    **United States District Judge**